UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MIXRTVAGD.PL. SP. Z.O.O., <br><br> Plaintiff, <br><br> v. <br><br> SHALLAL INTERNATIONAL, LLC, et al., <br><br> Defendants. | Case No. 24-cv-10494 <br><br> Honorable Robert J. White |

**ORDER DENYING PLAINTIFF MIXRTVAGD.PL. SP. Z.O.O.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)**

Plaintiff Mixrtvagd.PL. S.P. Z.O.O. (Mixrtvagd) and Defendants Shallal International, LLC (Shallal International) and Palvo Shallal allegedly entered into an agreement through which Defendants agreed to purchase a certain amount of Raffaello-brand candy from Mixrtvagd. (ECF No. 1, PageID.4–5). Even though Defendants received the candy from Mixrtvagd, Defendants to date have refused to pay for the product. (*Id.* at PageID.5). As a result, Mixrtvagd commenced this lawsuit against Defendants alleging claims for (1) breach of contract; (2) conversion; and (3) unjust enrichment. (ECF No. 1, PageID.6–11). Presently before the Court is Mixrtvagd's motion for summary judgment on all of its claims. (ECF No. 20).

In response, Defendants claimed Mixrtvagd sent them product that differed vastly from what the parties agreed to. That is, Mixrtvagd sent Defendants a quantity of candy that far exceeded Defendants' expectations. (ECF No. 22, PageID.391). Defendants raised other performance failures too, including that the candy received expired within four-to-five months instead of the anticipated year-and-a-half date. (*Id.* at PageID.384, 391). Given the discrepancy in performance and lack of written agreement, a material dispute of fact therefore existed as to whether the parties had a valid contract in the first place. (*Id.* at PageID.389).

Likewise, when Defendants notified Mixrtvagd of the non-conforming nature of the goods, Mixrtvagd told Defendants to keep the candy and sell as much as they could before the expiration date. (*Id.* at PageID.393–94). Accordingly, whether Defendants converted Mixrtvagd's product under Michigan law is subject to factual dispute. (*Id.*). The same is true for Mixrtvagd's unjust enrichment claim considering that Defendants allegedly offered to pay Mixrtvagd the proceeds made from candies Defendants were able to sell. (*Id.* at PageID.395).

Overall, both parties asserted that they are victims of the other's con. Defendants retained Mixrtvagd's product without compensation, despite repeated promises to remit payment. (ECF No. 20, PageID.166). Mixrtvagd attempted to offload unsaleable candy to an unsuspecting customer, the Defendants, in the "hopes of coming into a windfall." (ECF No. 22, PageID.385). But after reviewing the

parties' briefing and exhibits, the Court can discern no evidentiary consensus to support either party's accounting of events. Thus, for the reasons explained below, the Court will deny Mixrtvagd's motion.[1]

## I.   Background

Mixrtvagd is a Polish company with a corporate structure similar to that of a limited liability company in the United States. (ECF No. 1, PageID.2; ECF No. 20, PageID.162). Mixrtvagd's principal place of business is in Boguchwala, Poland. (ECF No. 1, PageID.2; ECF No. 20, PageID.162). Shallal International is a Michigan liability company with its principal place of business in Shelby Township, Michigan. (ECF No. 1, PageID.2; ECF No. 20, PageID.162). Pavlo Shallal[2] is the sole owner and employee of Shallal International and is a Michigan resident. (ECF No. 1, PageID.2; ECF No. 20, PageID.162; ECF No. 22-3, PageID.419). Shallal International operates as a middleman. (ECF No. 22-3, PageID.419–20). The company buys international and domestic products and then sells them to customers or other resellers. (*Id.* at PageID.420).

Shallal was first introduced to Mixrtvagd and the Raffaello candy by one of his customers, referred to as Chris. (*Id.* at PageID.421–22). After Shallal expressed

---

[1] The Court does not believe oral argument is necessary to resolve the issues in dispute and will decide the motion absent a hearing. *See Himes v. United States*, 645 F.3d 771, 784 (6th Cir. 2011) ("Rule 56 does not require an oral hearing on a motion for summary judgment.").
[2] Shallal also goes by the name "Zeek." (ECF No. 22-3, PageID.415).

3

interest in purchasing the candy, Chris arranged for Shallal to speak with his father, Mark. (*Id.* at PageID.422). Communications between Mark, Shallal, and Chris began in December 2022 over WhatsApp video chat. (*Id.* at PageID.422, 450). About one-to-two months after the initial introduction, Mark informed Shallal he would be able to "get [Shallal] some candy." (*Id.* at PageID.422). Shallal testified that Mark spoke little English. (*Id.*).

Mark served as Mixrtvagd's representative during negotiations with Shallal. (ECF No. 20-3, PageID.249). According to Shallal, he asked Mark to send him 833 cases of candy at $2.32 per unit. (ECF No. 22-3, PageID.423, 451). Each case contained six units. (*Id.* at PageID.451). Shallal therefore anticipated approximately 5,000 total units. Shallal understood the parties' agreement to require that the candy would be shipped directly from Poland to Sterling Heights, Michigan. (*Id.*). Shallal also believed that the candy would expire in October 2024, or a year-and-a-half out. (*Id.* at PageID.453). All of these agreement terms stemmed from Shallal's conversations with Mark. (*Id.*).

But Mixrtvagd's performance departed drastically from Shallal's expectations. Sometime between late March and early April 2023, Mixrtvagd shipped 30,240 units at $2.54 per unit with a $4,900 shipping and handling cost, per an April 3, 2023 invoice (the Invoice) Mixrtvagd sent to Shallal. (ECF No. 20-4, PageID.263). The Invoice therefore listed the total price for the candy as

4

$81,709.60. (*Id.*). Instead of shipping directly to Michigan, the candy arrived in New York. (ECF No. 20-5, PageID.267; ECF No. 22-3, PageID.452). To release the candy from customs and ship it to Michigan, Shallal spent almost $15,000. (ECF No. 22-3, PageID.437). The candy finally arrived in Michigan on May 11, 2023. (*Id.* at PageID.427). But instead of an October 2024 expiration date, the candy Shallal received expired in October 2023, four-and-a-half months after its arrival. (*Id.* at PageID.430).

Shallal addressed the shipment's discrepancies with Mark over a video conference. (*Id.*). Mark asked Shallal to keep the shipment and to sell whatever product he could on the promise of a discount. (*Id.* at PageID.430–31). Shallal testified that he did what he could to sell the product. (*Id.* at PageID.433). But even after applying steep discounts, Shallal sold only a fraction of what he received given the candy's impending expiration date. (*Id.*). Overall, Shallal testified that he sold about $22,000 worth of product and ultimately threw out a full storage room of unsaleable candy. (*Id.* at PageID.432, 481).

Mixrtvagd presented a different summation of events. According to Mixrtvagd, the parties entered an agreement through which Shallal assented to purchase 30,240 units of candy. (ECF No. 20, PageID.162–63). The parties' agreement is apparently reflected in a series of WhatsApp messages, an email, and the Invoice. (*Id.* at PageID.163). All of these documents are contemporaneous with

5

the late March/early April 2023 shipment date. (ECF No. 20-2; ECF No. 20-3; ECF No. 20-4; ECF No. 20-5).

That is, on March 31, 2023, Mark informed Shallal over WhatsApp that the candy had an expiration date of "23.10.2023" and that the shipment would depart the following Thursday. (ECF No. 20-2, PageID.197). Shallal responded with a question about how to transmit funds but otherwise raised no issues with the message. (*Id.* at PageID.197–98). On April 4, 2023, Mark confirmed that the candy would ship to the address Shallal provided, and that the delivery would leave Thursday as scheduled. (*Id.* at PageID.200). Shallal followed up by asking how many cases/palates were arriving; Mark responded that "everything is written in the bill," which Shallal should have received. (*Id.*).

Mixrtvagd purported that the Invoice and a March 31, 2023 email memorialized the parties' agreement. (ECF No. 20, PageID.163). The Invoice states, in English, the following: the product, "Ferrero Raffaello Almond Coconut Candy Box 150g"; the quantity, "30,240"; the net price, "2[.]54"; and the net price for shipping and handling, "4,900." (ECF No. 20-4, PageID.263). As mentioned, it lists the total as "81,709[.]60." (*Id.*). In the March 31, 2023 email, Mixrtvagd informed Shallal that Mixrtvagd will fulfill his order for 30.240 Raffaello and that "[u]nfortunately, [Mixrtvagd] cannot ship more" due to "logistical limitations." (ECF No. 20-5, PageID.267). Mixrtvagd stated that "[t]he goods will be transferred

6

to the port of destination New York" and that Shallal should contact his broker to collect the goods from the port. (*Id.*).  Granted, neither document mentioned the candy's expiration date nor contained Shallal's signature or a form of acknowledgement.

After Mixrtvagd sent the March 31 email and the Invoice, the following exchange between Mark and Shallal took place on April 5, 2023:

> *Mark*: thank you [Shallal] will you be ready to send us a payment confirmation tomorrow
>
> *Shallal*: What's the date on candy again my friend
>
> *Mark*: [Shallal] chocolates expiration date 23.10.2023
>
> *Mark*: hello my friend I would like to ask you to confirm the payment
>
> *Shallal*: How do you want me to confirm the payment and everything the 81,000$ ti [sic] send it all in one time

(ECF No. 20-2, PageID.201).

Although Shallal seemingly confirmed the roughly $81,000 cost of the candy in the above messages, communications between the parties devolved shortly thereafter.  Mark began sending repeated requests for Shallal to complete payment for the product. (*Id.* at PageID.203–05).  At some point on April 5, the parties seemingly spoke on the phone. *See id.* at PageID.203 (listing "Incoming video call" that lasted "1:18").  Over the next two weeks, Shallal reassured Mark that he would pay for the shipment once he figured out how to transfer the funds via his bank. (*Id.*

7

at PageID.205–14). The remaining WhatsApp messages go through June 2023 and contain similar conversations; Mark asked for payment, and Shallal claimed that payment was coming. (*Id.* at PageID.214–47). In a different series of messages with Mixrtvagd's owner, Shallal assured that he would pay for the candy, despite taking issue with the failure to deliver directly to Michigan, the difference in price for each unit, and the added fees in paying customs and arranging transport from New York to Michigan. (ECF No. 20-3, PageID.251–53).

Mixrtvagd brought this lawsuit once it became clear that Defendants did not intend to uphold their end of the bargain. (ECF No. 1; ECF No. 20, PageID.165). Mixrtvagd brought a breach of contract claim under both the United Nations Convention on Contract for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9, 1489 U.N.T.S. 3 (CISG) and Michigan common law. (ECF No. 1, PageID.6–9). Mixrtvagd also brought claims for statutory and common law conversion and unjust enrichment. (*Id.* at PageID.9–11). After the close of discovery, Mixrtvagd moved for summary judgment on all of its claims. (ECF No. 20). According to Mixrtvagd, there is no material dispute of fact that Defendants breached the parties' contract, and that Defendants converted Mixrtvagd's goods in violation of Michigan statutory and common law. (*Id.* at PageID.165). In the event the Court found that the parties did not have a valid agreement, Mixrtvagd asked the Court to grant summary judgment on its unjust enrichment claim. (*Id.* at

8

PageID.188–89). That is, Defendants' retention of the candy and any funds made from their sale unjustly benefited Defendants at Mixrtvagd's expense. (*Id.* at PageID.189). Defendants responded that the parties did not have a valid agreement, and even if they did, the candy Mixrtvagd shipped did not conform with the parties' agreement. (ECF No. 22, PageID.388–92). Likewise, Mixrtvagd gave Defendants permission to retain the candy and sell what it could, thereby undermining the conversion and unjust enrichment claims. (ECF No. 22, PageID.393–95).

As explained below, the Court will deny summary judgment as to Mixrtvagd's (1) breach of contract claim under the CISG; (2) statutory and common law conversion claims; and (3) unjust enrichment claim. The Court finds that material disputes of fact exist as to these claims such that resolution at this juncture is improper. But given that the CISG claim preempts Mixrtvagd's common law breach of contract claim, the Court will grant summary judgment on this count in favor of Defendants.

**II.    Legal Standard**

A party may move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In analyzing a summary judgment motion, "'the court must view the evidence in the light most favorable to the non-moving party

9

and draw all reasonable inferences in its favor.'" *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.* 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Sierra Brokerage*, 712 F.3d at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Overall, the court's inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**III. Analysis**

Mixrtvagd claimed that the facts clearly and unequivocally show that the parties had a valid contract, that Defendants breached that contract, and that Defendants converted Mixrtvagd's product to its own benefit. (ECF No. 1, PageID.6–10; ECF No. 20, PageID.179–87). In the event the Court disagrees that a valid contract existed, the facts still prove that Defendants were unjustly enriched at Mixrtvagd's expense by accepting the candy without payment. (ECF No. 20, PageID.189). In response, Defendants presented evidence to undermine the existence of a valid contract. Shallal claimed that he never agreed to the quantity,

10

agreed-upon price, shipment terms, and expiration date of the candy set forth in Mixrtvagd's version of the contract. (ECF No. 22-3, PageID.428–30, 436, 452–53). Shallal also testified that he had Mixrtvagd's permission to keep and sell the non-conforming goods, which contradicts Mixrtvagd's argument that Defendants unlawfully retained the candy and thereby establishes a material dispute of fact. (*Id.* at PageID.478–80, 488).

As explained further below, the Court finds the circumstances of the contract's formation too murky to grant summary judgment on Mixrtvagd's breach of contract claim under the CISG. The fact that the parties reached their agreement orally over a series of phone conversations complicates the issue for the Court. Likewise, the documents and communications that allegedly memorialized the agreement are dated after the agreement's inception. Based on the evidence presented, a genuine dispute of fact remains as to whether the parties entered a valid agreement in the first place. As such, the Court believes the issues best fit for submission to a jury. *See Anderson*, 477 U.S. at 251–52. The Court, however, will grant summary judgment on the breach claim under Michigan law, given that the CISG preempts state law.

As for the conversion claims, the Court finds summary judgment inappropriate for similar reasons as those described. Finally, Mixrtvagd's unjust enrichment claim depends on whether a valid agreement exists. Without a present

answer to that question, the Court will deny Mixrtvagd's request for summary judgment.

### A. Breach of Contract Under the CISG

A material dispute of fact exists as to whether the parties entered into a valid contract under the CISG. Because a valid contract is the basis for a breach of contract claim, the Court cannot grant summary judgment for Mixrtvagd.

The CISG is an international treaty that "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." Art. 1(1)(a). Because the United States and Poland are both signatories to the CISG, the parties' contract falls within the CISG's purview. *See CISG Contracting States by name*, Fac. of L. Univ. of Bassel, https://cisg-online.org/cisg-contracting-states/contracting-states-by-name. And so long as "the parties have not elected to exclude [the CISG's] application," the CISG controls an international sale of goods contract and its formation. *See Brands Int'l Corp. v. Reach Cos., LLC*, 103 F.4th 501, 504 (8th Cir. 2024) (citation omitted). Here, neither party disputed that the CISG applied to the alleged agreement.

Mixrtvagd claimed Defendants breached the parties' agreement by failing to pay for the products provided. (ECF No. 20, PageID.183). Defendants responded that the parties never entered an agreement reflecting Mixrtvagd's alleged contract

12

terms. (ECF No. 22, PageID.388–89). Given the seeming lack of mutual assent, the Court will begin its inquiry with whether a valid contract existed between the parties.

Under Article 23 of the CISG, "[a] contract is concluded at the moment when an acceptance of an offer becomes effective in accordance" with the CISG's provisions. A valid offer must be "sufficiently definite" and "indicate[] the intention of the offeror to be bound in case of acceptance." CISG Art. 14(1). To be "sufficiently definite," a proposed offer must "indicate[] the goods and expressly or implicitly fix[] or make[] provision for determining the quantity and the price." *Id.* "A statement made by or other conduct of the offeree indicating assent to an offer is acceptance" and such acceptance "becomes effective at the moment the indication of assent reaches the offeror." Art. 18(1).

Here, Mixrtvagd and Defendants allegedly formed the contract over "multiple phone calls and via WhatsApp messages." (ECF No. 20, PageID.180–81). Accordingly, the Court must rely on the sworn deposition testimony and contemporaneous writings to piece together what was said on the calls. Mixrtvagd purported that its March 31, 2023 email and the Invoice memorialized the parties' agreement. (ECF No. 20, PageID.179–80, 182–83). The email, sent prior to shipment, indicated a quantity of 30,240 units. (ECF No. 20-5, PageID.267). The Invoice, issued a few days later, set forth a quantity and purchase price of 30,240 units at $81,709.60. (ECF No. 20-4, PageID.263). In addition, Mark confirmed in

13

multiple WhatsApp messages that the candy had an expiration date of October 2023. (ECF No. 20-2, PageID.197, 201).

In contrast, Shallal testified that he spoke "face to face" with the Mark about the candy and asked Mixrtvagd to supply 833 units of candy, not 30,240 units. (ECF No. 22-3, PageID.422). Mark agreed to do so at $2.32 per unit, and informed Shallal the candy would expire in October 2024. (*Id.* at PageID.451). Shallal's testimony regarding his oral conversations with Mark is therefore at odds with Mixrtvagd's understanding of the contractual terms as reflected in the March 31 email and the Invoice.

The WhatsApp messages do little to settle the parties' factual dispute. From what the Court can discern, Defendants at the very least anticipated a shipment of candy from Plaintiff. But the WhatsApp messages seem to begin around the same time that Mixrtvagd shipped the products. The messages therefore do not necessarily reflect an offer and acceptance between the parties as required under the CISG. The most conclusive piece of evidence is Shallal's message to Mark asking him how to confirm the $81,000 payment. (ECF No. 20-2, PageID.201). But Shallal testified that after Mark told him to keep the candy, Shallal said he would try and send the full $81,000 if he could sell it for that much. (ECF No. 22-3, PageID.432). If Shallal could not sell the candy, however, he was "not going to send [Mixrtvagd] whatever [it] ask because that was [Mixrtvagd] mistake that [it] send [Shallal] 32,000 cases."

14

(*Id.*). So the Court is not convinced that Shallal's WhatsApp messages about paying the $81,000 overcome Shallal's contradictory testimony, especially when drawing inferences in favor of Defendants. *See Sierra Brokerage*, 712 F.3d at 327. At least it is not enough to prove that the parties entered into a valid contract per the CISG on its own. Based on the evidence presented, then, a material dispute of fact exists as to whether Shallal assented to Mixrtvagd's terms as required under the CISG. As a result, the Court will deny Mixrtvagd's motion for summary judgment on Count I.

### B. Breach of Contract Under Michigan Common Law

The CISG preempts Mixrtvagd's breach of contract claim under Michigan common law. Count II therefore cannot survive. As provided by Congress, treaties entered into by the United States take precedence over state law in federal courts. 28 U.S.C. § 1652 ("The laws of the several states, except where . . . treaties of the United States . . . otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). When the United States signed on to the CISG, it "necessarily incorporate[d] the treaty as part of [its] domestic law." *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003); *see also Brands Int'l Corp.*, 103 F.4th at 504 (noting CISG is "incorporated federal law") (citation omitted). Accordingly, Mixrtvagd cannot assert a common law breach of contract claim considering the CISG controls the outcome of the parties' contractual dispute. *See Brands*

15

*International Corp.*, 103 F.4th at 504–05 (finding choice-of-law analysis "unnecessary" as CISG governed dispute); *see also Bus. Mobility Sys., Inc. v. Fibernetics Corp.*, No. 1:13-cv-1224, 2014 WL 12672687, at *10 (W.D. Mich. Apr. 14, 2014) ("[W]here the parties have not opted out of CISG application, there is no need to conduct a state choice of law analysis."). The Court will therefore grant summary judgment in favor of Defendants on Count II and dismiss the claim.

### C. Conversion

The Court will deny Mixrtvagd's conversion claims as a genuine dispute of material fact exists as to whether Defendants improperly retained the candy. To start, Mixrtvagd's conversion claims arise under Michigan law, not the CISG. That is, the CISG contains no provision regarding conversion, and Mixrtvagd explicitly brought its conversion claims under Michigan's applicable statute and the common law. (ECF No. 1, PageID.9–10).

Under Michigan statute, a plaintiff may recover damages for defendant's conversion of plaintiff's property to its own use. Mich. Comp. Laws § 600.2919a. The same is true under the common law. Both the statute and the common law define conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 303 Mich. App. 441, 447 (2013) (citation omitted). The statute, however, imposes an additional requirement that the plaintiff

16

"prove [] the defendant converted the property to his or her 'own use.'" *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 581 (6th Cir. 2016) (quoting *Aroma Wines*, 497 Mich. at 354–59).

Mixrtvagd claimed that by keeping and selling the candy without payment, Defendants wrongfully converted Mixrtvagd's property to its own use. (ECF No. 20, PageID.187–88). In contrast, Shallal testified that Mark told him over video chat to retain the non-conforming goods and that he would receive a discount for doing so. (ECF No. 22-3, PageID.430–31, 469–70). Given the dispute of fact as to whether Defendants had Mixrtvagd's authorization to retain the goods, the Court will deny summary judgment on Plaintiff's conversion claim.

### D. Unjust Enrichment

Because the issue of whether a valid contract exists between the parties is left open by the Court's decision, the Court will decline to decide Mixrtvagd's unjust enrichment claim. That is, an unjust enrichment claim cannot proceed if an express contract exists covering the subject matter. *See Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 205 (2017). So until the validity of the parties' agreement is determined, the unjust enrichment claim cannot be decided. Thus, the Court will deny Plaintiff's motion for summary judgment.

\* \* \*

For the reasons given, the Court **ORDERS** that the motion for summary judgment (ECF No. 20) is **DENIED**.

Dated: October 15, 2025         s/Robert J. White
                                Robert J. White
                                United States District Judge